# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70255-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MELONI TERRY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 30, 2014 |
| | ) | |

VERELLEN, A.C.J. — Meloni Terry challenges her convictions for burglary in the second degree and possessing stolen property in the third degree. She argues that the prosecutor committed misconduct in closing argument by appealing to the jury's fear of what might have happened to the victims during a residential burglary. Because the prosecutor's statements were not so flagrant and ill intentioned that an instruction could not have cured any resulting prejudice, Terry waived the issue by failing to object during closing argument.

Additionally, she challenges the sufficiency of the evidence supporting her conviction for possessing stolen property. But viewed in a light most favorable to the State, there was sufficient evidence that she "disposed of" stolen property. Therefore, we affirm.

FACTS

When George and Emilie Rankin returned to their Orcas Island home, George thought he heard footsteps near a studio on the property. As he approached the studio, he heard what sounded like two or three people running around inside. George then entered the studio and noticed that it was messier than he had left it—bags of their belongings were lying on their side with the contents pulled out of them. He grabbed a vacuum cleaner tube to make himself feel safer and looked around for less than a minute, but did not see anyone or anything. Emilie noticed that a back window in the studio was open. They concluded that the noises and damage were caused by raccoons, locked the doors to the studio, and started to drive to the post office on an errand.

As they drove down the road, they noticed a blue station wagon parked near a gate on their property. George approached the car and noticed some of their property in the back seat: Emilie's red plaid housecoat, lime green fleece, and his blue work jacket. George then realized that they were being robbed.

Neither George nor Emilie had a cell phone with them, so they tried to figure out how to keep the car from driving away with their property. A red and black sports car then drove down the road and Emilie flagged it down. She asked him who he was going to see and he answered a woman at the end of the road, but could not describe the woman or where her house was.

Just then, Terry came walking down the road, waved, and told the Rankins that everything was okay, her car broke down, that she called her brother to come help her. The Rankins asked Terry what their stuff was doing in her car and the man in the red

and black sports car quickly drove away. Terry told the Rankins that the jackets in her car were hers. As Terry approached the driver's side of the station wagon, George noticed that she had one of their garden knives tucked in the back of her pants. The Rankins, more cautious after seeing the knife, then watched Terry unlock her car door, start up the car and drive away.

George and Emilie memorized Terry's license plate number and returned home to call the police. Undersheriff Bruce Distler arrived at the Rankins property and accompanied them back to the studio. Upon closer inspection, the Rankins noticed that other property was missing, including chainsaws and weed eaters. The Rankins also noticed that one of the studio doors was ajar, even though they had closed and locked all the doors before leaving the property. George then became concerned that someone had indeed been in the studio when he and Emilie entered it earlier.

The Rankins accompanied Undersheriff Distler to a home that was the registered address of the station wagon. There, they identified Terry, the blue station wagon, and the red and black sports car. George was able to identify his blue work jacket that was in the back of the station wagon. Deputy Jack Wilsey went to the house on the property and returned with a red plaid housecoat and a lime green fleece. The Rankins also identified these as Emilie's.

The State charged Terry with one count of burglary in the second degree and one count of possessing stolen property in the third degree. At trial, Terry presented evidence that the blue work jacket, red plaid housecoat and lime green fleece belonged to her. A jury convicted Terry on both counts.

Terry appeals.

DISCUSSION

*Prosecutorial Misconduct*

Terry argues that the prosecutor's statements in closing argument were flagrant, ill intentioned, and incurable by a limiting instruction. We disagree.

The prosecutor began closing argument with the following narrative:

> Your Honor, Counsel, Members of the Jury, this was a very—potentially a dangerous situation. I sometimes think that God protects the innocent and the naïve. In this particular case I would suggest that the Rankins were naïve, and that's probably what saved them in this situation.
>
> I'm not going to go over the photographs. They're there. You've seen them, but I ask you, what would have happened if George Rankin were a little more skeptical initially and had gone down into the small room towards the back where that little bathroom is and if that's where one of the burglars was hiding? There's George blocking the person's way out in the back of that room. What would have happened?
>
> I ask you what would have happened if George had climbed that ladder to go up to the loft to see what was going on there and if that is where the person or persons were hiding? And there's George on a ladder blocking the path of the burglars. What would have happened? Luckily, they're naïve. They live in this wonderful place. No one had ever burglarized them before. They've had some strange things happen, but nothing really significant. They feel safe. And when they looked at the situation luckily they said, doggone raccoons. Got to be raccoons. Thank God they were willing to say that at that time.[1]

Defense counsel did not object.

"'Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard.'"[2] "The defendant bears the burden of showing that the comments were improper and prejudicial."[3] Failure of the defendant to object or request a curative

---

[1] Report of Proceedings (RP) (Mar. 26, 2013) at 205-06.

[2] State v. Lindsay, No. 88437-4, 2014 WL 1848454, at *3 (Wash. May 8, 2014) (quoting State v. Brett, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995)).

[3] Id.

instruction at trial waives the issue of misconduct unless the conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.[4] The prejudicial effect of improper comments must not be viewed in isolation but rather in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.[5] Defense counsel's failure to object, move for a mistrial, or request a curative instruction strongly suggests that, in context, the argument did not appear prejudicial.[6]

Although a prosecutor has wide latitude to argue reasonable inferences from the evidence, he or she must seek convictions based only on probative evidence and sound reason.[7] It is improper for a prosecutor to deliberately appeal to the jury's passion and prejudice and thereby encourage the jury to base their verdict on the improper argument rather than properly admitted evidence.[8]

In State v. Russell, the Supreme Court held that the prosecutor committed misconduct by appealing to the jury's fears and arguing that, if acquitted, the defendant would go to another community and begin killing again.[9] But the Russell court went on to hold that the prosecutor's misconduct was not so flagrant as to warrant a new trial because Russell had not objected to the argument, the argument did not engender

---

[4] Id.

[5] State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

[6] State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990).

[7] In re Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).

[8] Id.

[9] 125 Wn.2d 24, 89, 882 P.2d 747 (1994).

repulsion above and beyond the gruesome nature of the crime, and the defense incorporated the statement into its own argument.[10]

The prosecutor's remarks here invited the jurors to speculate as to what would have happened had George discovered a burglar inside his home. Although an improper appeal to emotion, the introduction to closing argument was not so flagrant and ill intentioned that the argument could not have been cured with an instruction if Terry had objected.

This case is similar to Russell, but the remarks themselves were not as inflammatory as the remarks made in Russell. The risk faced by George when he interrupted a burglary in progress was already apparent under the facts admitted at trial. Even though Terry's defense counsel did not incorporate the statement into his own argument as Russell's attorney did, it is likely that a curative instruction could have erased any fear or revulsion the jurors felt based on the prosecutor's comments.

Additionally, the trial court instructed the jury that "[y]ou must not let your emotions overcome your rational thought process. You must reach your decision based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference."[11] Juries are presumed to follow instructions.[12] Therefore, it is unlikely that these introductory comments prejudiced Terry.

---

[10] Id.

[11] Clerk's Papers at 23.

[12] State v. Dye, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013).

Terry argues that the prosecutor's statements were analogous to the statements made in State v. Pierce and require reversal.[13] We disagree. In Pierce, during closing arguments, the prosecutor fabricated an entire conversation between the defendant and his victims just before he murdered them.[14] The prosecutor also created a fictitious internal dialogue the defendant had with himself before deciding to rob and murder the victims, which the prosecutor recited in a first person narrative during closing.[15] Finally, the prosecutor stated that "[n]ever in their wildest dreams" or "wildest nightmares" would the victims have imagined that they would be murdered that day.[16] Division Two of this court held that these arguments had absolutely no basis in the record and improperly asked the jurors to step into both the victim's and the defendant's shoes.[17] It also held that, taken together, there was more than a substantial likelihood that the arguments affected the jury verdict.[18] Here, the prosecutor's statements were not nearly as inflammatory as those made in Pierce. The introductory statements were isolated and not part of a string of improper arguments. They also were consistent with facts supported by the record. Therefore, reversal is not required.

---

[13] 169 Wn. App. 533, 280 P.3d 1158, review denied, 175 Wn.2d 1025 (2012).

[14] Id. at 543.

[15] Id. at 542.

[16] Id. at 541.

[17] Id. at 555.

[18] Id. at 556.

7

*Sufficiency of the Evidence*

Terry argues that the State failed to present sufficient evidence that she "disposed of" stolen property, as required by the "to convict" instruction for possession of stolen property in the third degree. We disagree.

If the State adds an unnecessary element in the to convict instruction without objection, the added element becomes the law of the case and the State assumes the burden of proving it.[19] A criminal defendant may challenge the sufficiency of the evidence to support such added elements.[20] In a criminal case, evidence is sufficient to support a guilty verdict if, viewed in the light most favorable to the State, any rational trier of fact could find each element of the crime proved beyond a reasonable doubt.[21]

In State v. Lillard, the to convict instruction for possessing stolen property required the State to prove beyond a reasonable doubt that the defendant "'knowingly received, retained, possessed, concealed, or disposed of stolen property.'"[22] This court held that because the instruction specifically listed the alternative definitions of "possession" as alternative means of the offense to be proved by the State, there must be sufficient evidence to support each alternative, unless the verdict was based on only one alternative means and substantial evidence supports that means.[23]

Here, similar to Lillard, the to convict instruction for possession of stolen property in the third degree required that the State prove beyond a reasonable doubt "[t]hat on or

---

[19] State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

[20] Id.

[21] State v. McKague, 172 Wn.2d 802, 805, 262 P.3d 1225 (2011).

[22] 122 Wn. App. 422, 434, 3d 969 (2004).

[23] Id. at 434-35.

about October 7, 2012, the defendant knowingly received, retained, possessed, concealed, disposed of stolen property."[24] Nothing in the record indicates that the verdict was based on only one of these alternatives. Therefore, the State was required to present sufficient evidence to support each alternative.

Terry argues that there was not sufficient evidence that she "disposed of" stolen property. The statute does not define the term "dispose of." In order to carry out the legislature's intent and ascertain the plain meaning of "dispose of," the court may look to the plain meaning as reflected in a dictionary definition.[25] *Webster's Third New International Dictionary* defines "dispose of" as:

> 1 a : to place, distribute, or arrange esp. in an orderly or systematic way (as according to a pattern) . . . b : to apportion or allot (as to particular purposes) freely or as one sees fit . . . 2 a : to transfer into new hands or to the control of someone else (as by selling or bargaining away) : RELINQUISH, BESTOW . . . b (1) : to get rid of : throw away : DISCARD . . . (2) : to treat or handle (something) with the result of finishing or finishing with ... : COMPLETE, DISPATCH . . . c : DESTROY[26]

Here, there was sufficient evidence that Terry moved Emilie's red plaid housecoat and lime green fleece out of her car and into a box near the door of her

---

[24] Clerk's Papers at 37. The to convict instruction did not include the conjunction "and" or "or" in the list of alternative definitions.

[25] In re Det. of Danforth, 173 Wn.2d 59, 67, 264 P.3d 783 (2011); see also Garrison v. Wash. State Nursing Bd., 87 Wn.2d 195, 196, 550 P.2d 7 (1976) ("Words in a statute should be given their ordinary meaning absent ambiguity and/or a statutory definition.").

[26] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 654 (2002); see also Modern Sewer Corp. v. Nelson Distrib., Inc., 125 Wn. App. 564, 571, 109 P.3d 11 (2005) (relying, in part, on the 1971 version of *Webster's Third New International Dictionary* to determine that the meaning of the term "dispose" in the Model Toxics Control Act, ch. 70.105D RCW, is "'[T]o place, distribute, or arrange esp. in an orderly or systematic way . . . ; to apportion or allot . . . : to transfer into new hands or to the control of someone else . . . ;; to get rid of: throw away.'") (alterations in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 654 (1971)).

mother's house. Deputy Wilsey testified that as he walked toward the door of Terry's mother's house, "I walked in and right at the base of the stairs on the left there was a box that had a lime green fleece and a red housecoat that looked similar to the ones that had been described by the Rankins."[27] He asked Terry's mother if she had seen the jackets before and she said, "No, I've never seen those before."[28] Taking the evidence in the light most favorable to the State, there was sufficient evidence that Terry disposed of the Rankins' property by taking the jackets out of her car and placing them or arranging them in a box at the base of the stairs in her mother's house.

At oral argument, Terry asserted that when the legislature uses different words in the same statute, we must presume it intends those words to have different meanings.[29] She claims that interpreting "dispose of" as meaning "place" or "arrange" makes it identical to other alternate definitions of possessing stolen property such as retaining, possessing, and concealing. But we do not need to address arguments raised for the first time at oral argument.[30] And even if we consider this argument, Terry does not establish error. While some overlap is presented in the other alternative definitions of possession, "dispose of" has a nuanced meaning that is different from the other

---

[27] RP (Mar. 26, 2013) at 119.

[28] Id. at 122.

[29] See Outsource Servs. Mgmt., LLC v. Nooksack Bus. Corp., 172 Wn. App. 799, 818-19, 292 P.3d 147, review granted, 177 Wn.2d 1019 (2013).

[30] Terry raised this argument for the first time at oral argument and cited no authority for her claim that alternative forms of possessing must have completely different meanings from one another. See RAP 12.1(a) ("the appellate court will decide a case only on the basis of issues set forth by the parties in their briefs"); State v. Johnson, 119 Wn.2d 167, 170-71, 829 P.2d 1082 (1992) (issues raised for the first time at oral argument are not properly before the court on appeal); State v. Young, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978) (courts may assume that where no authority is cited, counsel has found none after search).

definitions; to arrange or place is not the same as merely retaining, possessing or concealing an object. Terry's attempt to avoid the first definition of "dispose of" to mean arrange or place is not persuasive. There was sufficient evidence she disposed of the stolen property.

We affirm the trial court.

WE CONCUR: