

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75966-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SEAN MICHAEL REUBEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 11, 2018 |
| | ) | |

MANN, A.C.J. — Sean Reuben was charged by amended information with making a false statement, attempting to elude a police vehicle, and possession of a stolen vehicle. A jury convicted Reuben of making a false statement and attempting to elude a police vehicle. After the superior court learned that Reuben had previously pleaded guilty in district court to a charge of making a false statement for the same conduct, the court dismissed the false statement conviction based on double jeopardy.

Reuben argues on appeal that he was denied effective assistance of counsel and that the trial court erred in admitting photographs showing him in a jail jumpsuit. While we agree that defense counsel was ineffective, Reuben fails to demonstrate that the outcome of his trial would have been different had defense counsel informed the court of the double jeopardy issue in advance of trial. We affirm.

## FACTS

### Substantive Facts

Sean Reuben was living with his girlfriend Alyssa Swincicki at the home of Alyssa's mother, Erin Swincicki.[1] In February of 2016, after Alyssa and Erin got into an argument, Reuben and Alyssa left the home and stayed in a hotel with Alyssa's two young children. Before the argument, Erin had purchased a black Ford Focus for Alyssa to use. The title for the car was in Erin's name. Alyssa took the car when she and Reuben left Erin's house.

Alyssa and Reuben returned to Erin's house the day after the argument to pick up some belongings. While Reuben was not present, Erin told Alyssa to return the car, and Alyssa refused. Alyssa later told Reuben she was afraid her mother would file a police report and report the car stolen.

On February 29, 2016, King County Sheriff's Deputy Marcotte was at the intersection of 145th and Greenwood Avenue North at 7:40 p.m. when he observed a black Ford Focus without headlights run a red light. Deputy Marcotte activated his lights and siren in an attempt to pull the vehicle over, however the car sped ahead. Deputy Brewer, joined the pursuit. The Ford Focus continued to drive fast and erratically, crossing the centerline into the lanes of oncoming traffic, and running another red light. The deputies eventually terminated the pursuit out of concern for pedestrian safety. The police then contacted Erin about the car, and she filed a stolen vehicle report.

---

[1] Because Alyssa Swincicki and Erin Swincicki share a last name, they will be referred to by their first names. No disrespect is intended.

-2-

At trial, both deputies testified to seeing a light-skinned black male driving the vehicle, and Deputy Marcotte testified to seeing another light-skinned black male in the backseat of the car. Reuben testified that Alyssa was driving the car, and that he was riding in the backseat at the time of the pursuit.

The next day, March 1st, officers saw the vehicle parked outside a Laundromat. Alyssa was removing things from the trunk of the car and Reuben was standing in front. The officers believed Reuben appeared to be attempting to hide the license plate number. The officers identified the vehicle as stolen, so they approached the vehicle and detained Alyssa and Reuben. When asked his name, Reuben gave the false name Christopher Herring. However, when Reuben could not recall his social security number, the officers decided to run his fingerprints using a portable fingerprint scanner. Reuben told the police that he lied about his name because he was afraid of being arrested for having a stolen vehicle.

*Procedural Facts*

On March 11, 2016, Reuben appeared in Kent Municipal Court, accompanied by counsel, and entered a guilty plea to one count of making a false statement based on the February 29, 2016, events.[2] He was sentenced to 20 days in jail, plus a $43 criminal conviction fee.

Two months later, on April 14, 2016, Reuben was charged in superior court with attempting to elude a pursuing police vehicle for the incident on February 29, 2016. On

---

[2] Reuben filed a motion to supplement the record with the transcripts from his guilty plea. Arguably, supplementation is allowable under RAP 9.10, but only if this court concludes the existing record "is not sufficiently complete to permit a decision on the merits of the issues presented for review." Because neither party contests this previous guilty plea, or the double jeopardy ramifications, we do not deem these materials necessary to reach a decision on the merits of the trial rulings at issue in this appeal. The motion to supplement is denied.

August 19, 2016, the State amended the information to add two more crimes, possession of a stolen vehicle and, for a second time, making a false statement to a public servant. Reuben informed his defense counsel in July 2016 that he had previously pleaded guilty to the charge of making a false statement. Reuben's counsel, however, failed to inform the court of the previous conviction and double jeopardy issue.

A jury trial on all charges began on August 24, 2016. Evidence that Reuben gave a false name to the police, hesitated when asked for his birthday, and fidgeted to avoid being finger printed was presented at trial. Reuben also admitted to lying to the police.

The State moved to admit booking photographs the officers found in researching the vehicle and Reuben after the pursuit. The State argued the evidence was admissible because the officers had relied on the photographs to identify Reuben as the driver of the car for the attempting to allude charge. The defense objected to admitting the photographs, but also argued the photographs would need to be changed to reduce the inherent prejudice of admitting booking photographs. The trial court ruled the photographs would be admissible, stating,

> Normally, I would not allow booking photos at trial except under fairly extraordinary circumstances because they do have such a substantial prejudicial effect. Here, however, where identity is in dispute and it was the prior booking photos that allowed the [INAUDIBLE] of identity and is highly probative, and I find that the probative value, therefore, does outweigh the prejudicial effect of this evidence, at least sort of in the abstract.

The trial court instructed the parties to "sanitize" the photographs as much as possible, to remove "anything that sort of highlights the fact that this was associated with formal

custody" such as by removing "King County Sheriff's Office" at the top, "For Law Enforcement Use Only" at the bottom, and the "Arrest Date."

At the request of the court, the State cropped and redacted the photographs to remove any reference to booking information. The defense objected to the photographs, stating they still showed Reuben was wearing red in both photographs, with a standard background. The defense argues the jury could identify the jumpsuit and determine Reuben was being in custody at the time of the photograph. The photographs were admitted at trial.

At trial, Deputy Marcotte testified to one of the booking photos. Marcotte testified that he used the license plate number of the Ford Focus to perform a computer search and "locate a previous incident that plate was involved in." Deputy Marcotte further testified that Reuben's name was attached to "the incident report," and he was able to obtain a photograph of the person associated with that name. Marcotte testified that he recognized the individual in the photograph as "the person that was driving when the vehicle passed me." Officer Brewer also testified to the booking photo. Officer Brewer stated he viewed the original photograph on the night of February 29th, however, Reuben's hair was shorter in the photograph, so he viewed other photographs in which Reuben's hair more "accurately reflected the driver of the vehicle." From the photographs he identified Reuben as the driver.

At the request of the defense, the trial court gave a limiting instruction to the jury:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of photographs of Sean Reuben and testimony regarding the origin of those photographs and may be considered by you only for the purpose of weighing the testimony regarding identification. You may not consider it for any other purpose.

Any discussion of this evidence during your deliberations must be consistent with this limitation.

Reuben was acquitted of the charge of possession of a stolen motor vehicle but found guilty on the charges of attempting to elude and making a false statement. During sentencing, defense counsel informed the court of Reuben's previous conviction of making a false statement for the same act. The State moved to vacate the false statements conviction. The trial court dismissed the charge on double jeopardy grounds.

Reuben appeals.

## ANALYSIS

*Ineffective Assistance of Counsel*

The primary issue in Reuben's appeal is whether he received effective assistance of counsel when his defense counsel failed to inform the court before trial that he previously entered a guilty plea on the charge of providing false statements to a public official. While we agree that Reuben's counsel was ineffective, because Reuben fails to demonstrate prejudice, we affirm.

We review a claim of ineffective assistance of counsel de novo. State v. Jones, 183 Wn.2d 327, 338-39, 352 P.3d 776 (2015).

A criminal defendant has the right under the Sixth Amendment to the United States Constitution to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). There is a strong presumption that counsel's representation was adequate. State v. McNeal, 145 Wn.2d 352, 362, 37

P.3d 280 (2002). Legitimate trial strategy or tactics cannot be the basis for an ineffective assistance of counsel claim. McNeal, 145 Wn.2d at 363.

To demonstrate ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland, 466 U.S. at 687; State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Performance is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances." McFarland, 127 Wn.2d at 334-35. To establish prejudice, the defendant must show a reasonable probability that the result would have been different without the error. State v. Lord, 117 Wn.2d 829, 883-84, 822 P.2d 177 (1991). If a defendant fails to satisfy either part of the test, our inquiry ends. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Here, there is no dispute that Reuben's counsel was deficient. Reuben advised counsel in July, prior to trial, that he had already pled guilty to making a false statement in the municipal court. Counsel told the trial court that the matter had "slipped my mind" and "kind of went over my head." Counsel should have fully investigated and should have objected to the State's addition of the charge of making a false statement on double jeopardy grounds before trial.

Reuben must also, however, demonstrate that he was prejudiced. Reuben argues that the evidence admitted in support of the making a false statement charge— police testimony that Reuben lied to the police about his name, had trouble providing personal information, and attempted to "twitch" in order to evade the fingerprint scanner—was highly prejudicial. Reuben argues the record demonstrates the trial court

likely would not have admitted this evidence if it was aware that Reuben had previously pled guilty to this charge.

Reuben's argument is based on the pretrial discussion surrounding defense counsel's motion to exclude this evidence. In ruling the evidence admissible, the trial court noted the evidence was "relevant to the question of whether there was a false statement made to the police." The court further opined that the defense had "not chosen as a strategic matter . . . to enter a plea to that count," therefore the State was required to prove the elements of the offense beyond a reasonable doubt. Because the State needed to meet its burden, the court would permit them to "rely on relevant evidence as long as the prejudicial effect of that evidence doesn't outweigh its probative value." RP 109.[3]

The State does not deny this evidence was originally admitted for the purpose of proving the false statement charge. Instead, the State argues that even if the making a false statement charge had been dismissed before trial, the evidence of Reuben lying to the police and attempting to avoid being fingerprinted would have been admissible under ER 404(b) for the purpose of proving the count of possession of a stolen vehicle. We agree.

ER 404(b) prohibits a court from admitting "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity

---

[3] Reuben also cites to a statement made by the court in dismissing the charge, where the court opined, "I think it will probably get sorted out on appeal. It strikes me as very unfortunate that evidence was provided to the jury related to that count that they would otherwise have been likely entitled to hear, but that issue is not before me today." Reuben maintains this includes a transcription error, and the court intended to say "would not otherwise have been entitled to hear." Without evidence of such an error, it seems just as likely that the court was noting that the evidence could have been admissible on other grounds.

therewith." State v. Foxhoven, 161 Wn.2d 168, 174-75, 163 P.3d 786 (2007). Such evidence may, however, "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b) (emphasis added). Also, "under the res gestae or 'same transaction' exception to ER 404(b), evidence of other crimes or bad acts is admissible to complete the story of a crime or to provide the immediate context for events close in both time and place to the charged crime." State v. Lillard, 122 Wn. App. 422, 432, 93 P.3d 969 (2004).

Generally, before admitting ER 404(b) evidence, a trial court "must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." Foxhoven, 161 Wn.2d at 175. In this case, the trial court weighed the relevant factors before admitting this evidence for the purpose of proving the false statement charge, and not for the alternative purpose of proving Reuben's knowledge that the car had been reported stolen. Nevertheless, when a trial court does not weigh the evidence on the record, admission of that evidence may be upheld as harmless error where a sufficient record exists for the reviewing court to determine that, had the trial court properly weighed the evidence, it would have admitted it. See State v. Gogolin, 45 Wn. App. 640, 645, 727 P.2d 683 (1986); State v. Carleton, 82 Wn. App. 680, 686, 919 P.2d 128 (1996). Under these circumstances, even without the false statement charge, the trial court would have admitted this evidence for the purpose of

demonstrating knowledge and as res gestae evidence for the possession of a stolen vehicle charge.

RCW 9A.56.140(1) defines possessing stolen property, in part, as "knowingly to receive, retain, possess, conceal, or dispose of stolen property." (Emphasis added.) ER 404(b) evidence is admissible to prove a defendant's knowledge, and the evidence that Reuben gave a false name when he was found with the car is highly probative of Reuben's knowledge that the Ford Focus had been reported as stolen. The State in fact used the evidence for this purpose, when the State argued, without objection, that Reuben admitted to the officers that he gave a false name out of fear that Focus had been reported stolen. The evidence would also have been admissible to provide immediate context to the arrest of Reuben for the possession of a stolen vehicle charge. "A defendant cannot insulate himself by committing a string of connected offenses and then argue that the evidence of the other uncharged crimes is inadmissible because it shows the defendant's bad character, thus forcing the State to present a fragmented version of the events." Lillard, 122 Wn. App. at 431. Reuben has failed to demonstrate that, had his counsel raised the double jeopardy issue prior to trial, the outcome would have been different.

*Booking Photographs*

Reuben next argues the trial court committed reversible error by admitting redacted copies of booking photographs used by the police officers involved in the pursuit of the Ford Focus for the purpose of proving identity. Admission of evidence is within the trial court's sound discretion, which we will not disturb on review absent a showing of abuse. State v. Stubsjoen, 48 Wn. App. 139, 147, 738 P.2d 306 (1987).

Abuse occurs when the trial court's discretion is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The appellant bears the burden of proving abuse of discretion. State v. Hentz, 32 Wn. App. 186, 190, 647 P.2d 39 (1982), reversed on other grounds, 99 Wn.2d 538, 663 P.2d 476 (1983).

The State argues the booking photographs are not controlled by ER 404(b) because they did not constitute "other acts." We disagree. ER 404(b) encompasses not only prior bad acts and unpopular behavior, but any evidence offered to "show the character of a person to prove the person acted in conformity" with that character at the time of a crime. State v. Foxhoven, 161 Wn.2d at 175; State v. Everybodytalksabout, 145 Wn.2d 456, 466, 39 P.3d 294 (2002). Even with that broad definition, police booking photographs certainly imply prior bad acts that led to being arrested.

As previously stated, ER 404(b) evidence may be admissible for other purposes other than as propensity evidence, such as proof of identity. ER 404(b). Here, the trial court considered all of the necessary factors. The trial court found that the booking photographs existed in the database and were related to past misconduct. The trial court also identified the purpose of introducing the evidence was to demonstrate the identity of the driver at the time of the pursuit, a proper purpose under ER 404(b). The police officers' identification of the driver was certainly relevant to prove an element of the charge of eluding a police officer. Therefore, Reuben's argument essentially stands on whether the probative value of the evidence outweighed its prejudicial effect.

At trial, Reuben contested that he was the one driving the car at the time of the pursuit. Reuben testified that Alyssa had been driving, and that he had been in the

-11-

backseat of the car. Thus, the charge turned on whether the jury believed that the officers had correctly identified Reuben as the driver. At the time of the pursuit, the officers got a view of the driver. They were then able to quickly determine the identity of the driver based on a photograph in their system. Had more time passed between the incident and the identification, the jury may have placed less weight on the officers' identification of Reuben. While we agree booking photographs are inherently prejudicial, the trial court largely limited the prejudice from their use by redacting the photographs and including a limiting instruction. "ER 404(b) is not designed 'to deprive the State of relevant evidence necessary to establish an essential element of its case,' but rather to prevent the State from suggesting that a defendant is guilty because he or she is a criminal-type person who would be likely to commit the crime charged." Foxhoven, 161 Wn.2d at 175 (quoting State v. Lough, 125 Wn.2d 847, 859, 889 P.2d 487 (1995)). We cannot say the trial court abused its discretion in admitting the photographs.

We affirm.

_____
Mann, A.C.J.

WE CONCUR:

_____            _____

-12-