[No. 45355-6-I.   Division One.   September 24, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. MATTHEW G. SILVA, *Appellant*.

*Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*James H. Krider, Prosecuting Attorney,* and *David F. Thiele, Deputy,* for respondent.

BAKER, J. — Matthew G. Silva appeals his conviction for forgery, theft, and possession of stolen property on the

grounds that he did not validly waive assistance of counsel. Because he was not advised of the maximum penalty for the crimes with which he was charged, we agree and reverse.

I

Matthew Silva was charged on amended information with two counts of forgery, two counts of second degree theft, and one count of possession of stolen property. Early in the proceedings, he moved to disqualify his appointed counsel and the entire public defender's office with whom she was associated. He alleged a conflict of interest created by his filing of both a complaint with the Washington State Bar Association and a civil suit in federal court alleging civil rights violations. Upon evidence that the lawsuit had been filed, the court granted Silva's motion and appointed private substitute counsel.

Silva later moved to proceed pro se. His request occurred during a motion in a separate but concurrent criminal case in which he was also a defendant. Already pro se in that matter, he was in court on a motion for release on personal recognizance to prepare his defense. The court granted both Silva's request to be released and his request to proceed pro se in this case, based on the colloquy in which it had engaged with Silva in the other matter. The court conducted no new colloquy. Silva's counsel became standby counsel.

During his term of release, Silva did not prepare his defense. Instead, he served time in Oregon for a previous offense committed there and he defended new charges against him. There, too, he acted pro se.

Upon his return to Washington, Silva was again taken into custody. While detained, Silva filed numerous pretrial motions regarding access to legal materials, motions to dismiss, and a motion to recuse. Silva's efforts secured him with daily, private access to the jail law library as well as access to a computer and copying of several hundred pages a week.

In the end, the State agreed to drop two charges in exchange for which Silva agreed to a bench trial on stipulated facts. Silva was convicted and sentenced within the standard range on each count, to run concurrently. He appeals.

## II

Silva argues that the court provided him with insufficient information from which he could validly waive his constitutional right to assistance of counsel and proceed pro se. The Sixth and Fourteenth Amendments of the United States Constitution afford a criminal defendant both the right to assistance of counsel and the right to reject that assistance and to represent himself.[1] These rights are also explicit guarantees of article I, section 22 of the Washington State Constitution.[2] Because a tension exists, however, between the right to represent oneself and the right to adequate assistance of counsel, a defendant desiring to proceed pro se must make the request unequivocally.[3] In addition, the accused must knowingly and intelligently waive his right to counsel.[4] Whether the waiver is valid lies within the sound discretion of the trial court, who should indulge every presumption against a valid waiver.[5]

There is no formula for determining a waiver's validity,[6] but the preferred method is a court's colloquy with the accused on the record detailing at a minimum the seriousness of the charge, the possible maximum penalty involved, and the existence of technical, procedural rules governing the presentation of the accused's defense.[7] In this

---

[1] *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

[2] *State v. Kolocotronis*, 73 Wn.2d 92, 97, 436 P.2d 774 (1968).

[3] *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991).

[4] *DeWeese*, 117 Wn.2d at 377.

[5] *State v. Chavis*, 31 Wn. App. 784, 787, 789, 644 P.2d 1202 (1982).

[6] *DeWeese*, 117 Wn.2d at 378.

[7] *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984).

case, what colloquy exists occurred in another case. Although problematic, this fact alone is not fatal given the unique circumstances of this case, namely, that the two actions were essentially concurrent, both the prosecutor and defense/standby counsel were the same in both cases, the court was familiar with and involved in both cases, and the record in both cases evidences regular cross-references by the parties to either case.

But Silva is correct that the colloquy in the other case was insufficient as applied to this case. It was tailored to his postconviction request to proceed pro se in the other matter and therefore contained no warnings regarding the risks associated with preparing for trial by jury. Moreover, it failed to include critical information concerning the nature of the charges in this case and the maximum possible penalties Silva faced in this case.

Absent a colloquy, a waiver may still be valid if a reviewing court determines from the record that the accused was fully apprised of these factors and other risks associated with self-representation that would indicate that he made his decision with his "eyes open."[8] In *City of Bellevue v. Acrey* the Supreme Court warned, however, that only in rare circumstances would a record devoid of a colloquy contain sufficient information to show a valid waiver of counsel.[9]

In this case, Silva's recitation and qualitative description of the charges against him indicate that he understood their nature and gravity. Moreover, the record reflects ample evidence that Silva was aware of the risks attendant with self-representation. He had just completed a criminal trial with counsel during which he saw firsthand the complexity of the process by witnessing jury selection, presentation of evidence, including cross-examination, evidentiary objections and argument. In addition, by the time of trial in this case, Silva had twice represented

---

[8] *Acrey*, 103 Wn.2d at 209, 211; *Faretta*, 422 U.S. at 835.

[9] *Acrey*, 103 Wn.2d at 211.

himself in other trials in both King County and Oregon.

Silva also displayed exceptional skill during his numerous pretrial motions, as evidenced by a record of persuasively written briefs, skillful examination of witnesses, and articulate argument. Often, Silva obtained the relief he requested. His standby counsel described him as an active and bright litigator compared to practicing attorneys. The trial court also noted that Silva left a lasting impression of intelligence, ability, and industry. But even the most skillful of defendants cannot make an intelligent choice without knowledge of all facts material to the decision. Silva was never advised of the maximum possible penalties for the crimes with which he was charged. Absent this critical information, Silva could not make a knowledgeable waiver of his constitutional right to counsel.

The State contends that the enactment of Washington's Sentencing Reform Act of 1981 (SRA)[10] abrogates this strict disclosure requirement. It argues that the requirement of maximum penalty disclosure was established in the context of an indeterminate sentencing scheme where the trial court would issue a maximum sentence, but a parole board determined the actual length of time to be served. Under the SRA, in contrast, standard range sentences are prescribed by statute and the trial court determines at the time of sentencing the actual length of time served. Here, because the prosecutor recommended sentences within the standard range and Silva was advised of these ranges on all the charges against him, the State argues that he was advised of the maximum penalties he faced.

But this contention fails to acknowledge the authority of a trial court to reject a prosecutor's recommendation and impose a sentence that exceeds the standard range if it finds substantial and compelling reasons to do so.[11] Although Silva's three offenses would normally result in three

---

[10] Ch. 9.94A RCW.

[11] RCW 9.94A.120(2).

concurrently served sentences,[12] the court could have ordered an exceptional sentence by ordering Silva to serve the sentences consecutively.[13] If the court found valid reasons to do so, it could have exceeded the standard range on any of the sentences and imposed a term of incarceration up to the statutory maximum, in this case five years. This information was essential to assess the risk of proceeding without the assistance of counsel and Silva did not have the benefit of it.

We likewise reject the State's claim that the error was harmless because the trial court did not ultimately impose an exceptional sentence on Silva. It is fundamental that "deprivation of the right to counsel is so inconsistent with the right to a fair trial that it can never be treated as harmless error."[14]

Silva raised several additional issues in his supplemental pro se brief. We do not reach them because the invalidity of his waiver is dispositive.

Reversed.

KENNEDY and COX, JJ., concur.

---

[12] *See* RCW 9.94A.400(1)(a).

[13] *See* RCW 9.94A.390(i), .400(1)(a).

[14] *Frazer v. United States*, 18 F.3d 778, 782 (9th Cir. 1994) (defendant was denied assistance of counsel when attorney assaulted him with racial slurs) (citing *Chapman v. California*, 386 U.S. 18, 23 n.8, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963))); *United States v. Ramirez*, 555 F. Supp. 736, 742 (E.D. Cal. 1983) (right to counsel is fundamental in our scheme of justice and failure to make record from which to determine whether a waiver of counsel was valid constitutes reversible error).