
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 67657-1-I |
| Respondent, | ) | |
| | ) | ORDER AMENDING OPINION |
| v. | ) | |
| | ) | |
| TREVOR MICHAEL ZOPPI, | ) | |
| aka JAMES MICHAEL CARVER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

A panel of the court has determined that the opinion filed March 25, 2013 should be amended; now, therefore, it is hereby

ORDERED that the opinion be amended as follows:

DELETE the last sentence on page 2, which reads:

Judge Donald Kessler entered an order of competency.

REPLACE that sentence with the following sentence:

Judge Ronald Kessler entered an order of competency.

DELETE the first sentence of the first paragraph on page 14, which reads:

The only misstatement of the maximum sentence was the improper maximum concurrent sentence length stated on June 2.

**REPLACE** that sentence with the following sentence:

The only misstatement of the maximum sentence was the improper maximum consecutive sentence length stated on June 2.

DATED this 23rd day of April, 2013.

Appelwick, J

WE CONCUR:

Cox, J.

Becker, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
) No. 67657-1-I
Respondent, )
) DIVISION ONE
v. )
) UNPUBLISHED OPINION
TREVOR MICHAEL ZOPPI, )
aka JAMES MICHAEL CARVER, )
)
Appellant. ) FILED: March 25, 2013
)
_____ )

APPELWICK, J. — Carver alleges the trial court abused its discretion by declining to order a second competency evaluation and by allowing Carver to represent himself at trial. We affirm.

## FACTS

James Carver[1] was charged with two sets of crimes relating to different victims. The charges were tried together, and he was convicted on all counts.

In 2006, Carver was convicted of malicious mischief after he assaulted his mother and damaged her property. In April 2010, she obtained a domestic violence protection order against Carver. Carver violated the order in early July 2010 when he wrote his mother a letter and left her two voicemail messages. On July 11, he left another message, threatening "'I am going to rip your fucking head off.'" As a result, he was charged with felony harassment and two counts of misdemeanor violation of a court order.

In 2007, Jessica Smith, Carver's ex-classmate, came home and found Carver on her porch. When police arrived, they discovered candy on the porch. He was convicted

---

[1] We refer to the appellant as James Carver, because he signed the judgment and sentence using that name.

of misdemeanor stalking. In April 2010, he spray-painted "'Orion (heart) Lepus'" on Smith's garage door. Smith's husband discovered the message when he came home and called the police. Police discovered a chocolate bunny in the Smiths' backyard. After Carver was arrested, he revealed that he spray-painted the message, that he was Orion, and that Smith was Lepus. As a result, he was charged with felony stalking and malicious mischief in the third degree.

In November 2010, prior to trial, defense counsel expressed "significant concerns about [Carver's] competency." Counsel explained that Carver understood the nature of the charged offenses, but that his understanding was not rooted in reality. The trial court ordered Carver to undergo a competency evaluation

A psychologist from Western State Hospital issued a report on November 24, 2010 concluding that Carver was competent. He diagnosed Carver with a "psychotic disorder," but stated that Carver was not disorganized and did not have any significant impairment in cognitive function. The psychologist wrote that Carver was frustrated that he could not contact his mother and stated he might need a knife to break in to his mother's home if it was vacant. The psychologist noted Carver's reluctance to disclose his beliefs about his victims, but explained, "It appears likely he harbors delusional beliefs about them."

In February 2011, the defense asked for a continuance to allow a defense expert to complete a competency evaluation. On March 15, 2011, defense counsel stipulated to Carver's competency and represented that the expert had found Carver competent. Judge Donald Kessler entered an order of competency.

On April 3, 2011, Carver wrote a letter to Judge Kessler. He indicated that Smith was a false person impersonating one of Carver's high school classmates and that his mother was dead.

On May 4, defense counsel sought extra time to prepare an insanity defense. Carver was upset about the requested continuance. He was hopeful that the charges would be dismissed, because his mother was dead. Judge Theresa Doyle denied his request to discharge counsel.

On June 2, Carver sought to proceed pro se. After concerns were raised about Carver's continued competency, Judge Kessler asked the defense to have its expert render an opinion on whether Carver suffered from a mental illness to the extent that he could not conduct trial proceedings by himself.

On June 17, defense counsel informed the court that the defense expert determined Carver was cognitively intact and could represent himself. Defense counsel himself, however, expressed concern about Carver's competency. The prosecutor likewise noted that it had been a long time since the competency hearing. Judge Kessler stated that the competency concern was nothing new, and noted that Carver was still competent. He performed a colloquy with Carver regarding his decision to represent himself. Although Judge Kessler advised Carver that he was making a poor decision, he concluded that Carver made a knowing, voluntary, and intelligent waiver of his right to counsel. He appointed defense counsel as standby counsel for trial.

On July 11, Carver asked for a subpoena to obtain his high school year book so he could prove that Smith was an imposter and for funds so he could obtain his mother's death certificate. The prosecutor again indicated that it would likely be

"appropriate to have a new competency colloquy." Judge Steven Gonzalez asked the prosecutor to identify changes that would justify a new inquiry into competency. The prosecutor stated that in June the State knew that Carver believed his mother was dead, but did not know that Carver believed Smith was an imposter. That statement was incorrect, as Carver had previously written a letter indicating both beliefs and had expressed both beliefs at previous proceedings. Judge Gonzalez questioned Carver to determine whether he understood the charges against him, concluded he did, and allowed him to represent himself. Carver waived his right to a jury trial.

Carver was convicted on all five counts.

## DISCUSSION

Carver argues that he was entitled to a new competency evaluation. He also argues that he did not make a voluntary, knowing, and intelligent waiver of his right to counsel.

### I. Competency

Criminal defendants have a fundamental right not to be tried while incompetent. Drope v. Missouri, 420 U.S. 162, 171-72, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975). An incompetent person may not be tried, convicted, or sentenced so long as the incapacity continues. RCW 10.77.050. A defendant is incompetent if he or she "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010; State v. Lord, 117 Wn.2d 829, 900, 822 P.2d 177 (1991). Thus, the test has two parts: (1) whether the defendant understands the nature of the charges; and (2) whether he is capable of assisting in his defense. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 861-62, 16

P.3d 610 (2001). He does not need to be capable of suggesting or choosing a trial strategy. State v. Ortiz, 104 Wn.2d 479, 483-84, 706 P.2d 1069 (1985). And, the mere existence of a mental disorder or the existence of delusions does not prevent him from being competent. State v. Smith, 74 Wn. App. 844, 850, 875 P.2d 1249 (1994); State v. Benn, 120 Wn.2d 631, 661-62, 845 P.2d 289 (1993).

The trial court shall order a competency evaluation when there is reason to doubt a defendant's competency. RCW 10.77.060(1)(a). Once the trial court makes a determination that a defendant is competent, it need not revisit competency unless "'new information presented has altered the *status quo ante*.'" State v. Ortiz, 119 Wn.2d 294, 301, 831 P.2d 1060 (1992). In evaluating the need for a competency evaluation, the trial court may consider the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports, and the statements of counsel. Fleming, 142 Wn.2d at 863. Representations of medical findings can erase doubt in the court's mind. State v. Heddrick, 166 Wn.2d 898, 908, 215 P.3d 201 (2009).

The trial court's decision on whether to order a competency examination is reviewed for an abuse of discretion. Fleming, 142 Wn.2d at 863. The trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

A. June Proceedings

On June 2, the prosecutor expressed concern that it had been "quite a while" since Carver was found competent. Judge Kessler stated that Carver was probably suffering from a delusion disorder, but didn't see that the delusions made him

5

incompetent for trial. He asked the defense to have its expert render an opinion on whether Carver suffered from a severe mental illness to the point that he could not conduct trial proceedings by himself. He decided to defer the issue of whether Carver could proceed pro se until hearing from the expert.

On June 17, the prosecutor asked the court to consider defense counsel's concerns about Carver's competency. Defense counsel himself expressed "grave concerns" about Carver's competency. He argued that Carver believed his mother was dead and Smith was an actress and that those delusions went to "the very heart of his ability to represent himself." But, defense counsel also relayed the expert's opinion that Carver was cognitively intact and could represent himself. Judge Kessler declined to order a new competency evaluation and found Carver competent to represent himself.

Carver argues that under these circumstances, the trial court abused its discretion by not ordering a new competency evaluation. In addition to his general argument that his delusions worsened leading up to trial, Carver argues that the passage of time since the original competency determination and the urgings of both attorneys weighed heavily in favor of a new competency evaluation.

The passage of time may be one factor in determining if a new competency evaluation is warranted. But, there is no per se rule that the passage of time mandates a new evaluation. The test remains whether there is a showing that the status quo ante has changed. In fact, in the case Carver cites to support his statement that the passage of time is an appropriate factor to consider, the court concluded that the defendant was not entitled to a new evaluation. State v. Lafferty, 2001 UT 19, 20 P.3d 342, 359-60. The court reasoned that the allegedly new behaviors warranting a new evaluation

6

amounted to new people observing the same behavior already considered and ruled upon. Id. at 361. Similarly, it is not clear that Carver's delusions leading up to trial were new. Carver's argument fails to acknowledge that the psychologist who conducted that evaluation and determined that Carver was competent was aware that Carver likely held delusional beliefs. For instance, during his evaluation, Carver revealed that he may need a knife to break into his mother's vacant home. The report states that, due to Carver's statements and actions, it is "likely he harbors delusional beliefs about" his mother and Smith. The fact that Carver began to reveal more details about those delusions does not necessarily make them new or signal a change in the *status quo ante*.

Carver is correct that the trial court should give considerable weight to defense counsel's opinion regarding his client's competency. Lord, 117 Wn.2d at 901. But, the State has different motivations than defense counsel and Carver has not articulated why the prosecutor's concerns should be "entitled to even more reliance." And, the prosecutor never said that Carver was actually incompetent to stand trial. Rather, she indicated that current circumstances might warrant further competency inquiry.

More importantly, defense counsel's concerns were undercut by the defense expert's conclusion that Carver was still competent. At that point, the parties were fully aware of the extent of Carver's delusions. Deferring to the opinion of mental health experts is a tenable basis to find competency. State v. Lawrence, 166 Wn. App. 378, 389, 271 P.3d 280, review denied, 174 Wn.2d 1009, 281 P.3d 686 (2012). And, representations of medical findings can erase doubts in the court's mind. Heddrick, 166 Wn.2d at 908.

7

Carver nevertheless argues that there is no evidence that the defense expert considered Carver's developing delusions, because her report is not in the record. But, the trial court requested that Carver's own expert evaluate Carver's current competency, and defense counsel represented that the expert found Carver to be competent. Counsel was in the best position to provide the report and did not. Moreover, defense counsel did not object that the report was not in the record and did not attempt to challenge the basis of the expert's conclusion before the trial court. Carver is not arguing ineffective assistance of counsel. He cannot now succeed by arguing that defense counsel either failed to obtain a current evaluation as requested, or otherwise lied about the content of the report. The trial court was entitled to rely on defense counsel's representation that its expert believed Carver was competent. It did not abuse its discretion by declining to order a new competency evaluation.

### B. July Proceedings

On July 11, the prosecutor cautioned, "The State is concerned that the defendant has decompensated . . . in his time in the jail, since 2010, that he has delusions that were not present previously when he was evaluated by Western [State Hospital] and that that impacts his ability to understand the charges against him." She continued, "I'm not saying he's incompetent, but I have concerns and -- and would ask the Court to inquire further." She asked for a new competency colloquy. Judge Gonzalez explained that the issue was whether there were changes that would justify a new competency evaluation. The prosecutor said that in June she knew about the delusion concerning Carver's mother, but not his delusion concerning Smith. Judge Gonzalez asked standby counsel if he had noticed any changes in the month and a half that he had

been representing Carver. He replied that Carver's affect was stable. When asked if there were any specific issues regarding Carver's competency, standby counsel responded, "I don't have any particular concerns."

Judge Gonzalez then engaged in a colloquy with Carver concerning his understanding of the charges against him, his delusions, and his ability to represent himself. At the end of the colloquy, Judge Gonzalez asked the prosecutor if she would like any more inquiry. The prosecutor responded in the negative.

Judge Gonzalez had no basis to order a new competency evaluation, because neither the prosecution nor standby counsel presented any new information that altered the *status quo ante*. The delusions that the prosecutor brought to Judge Gonzalez's attention had already manifested themselves, at the latest, before the defense expert determined that Carver was still competent.

Further, a careful reading of the record reveals that the prosecutor only asked for a competency colloquy. She expressed concerns, but did not express a belief that Carver was actually incompetent. Judge Gonzalez then asked Carver a series of questions that touched on both prongs of the competency test: whether he understood the nature of the charges and whether he could assist with his defense. At the end of the inquiry, the prosecutor indicated she was satisfied with the colloquy. Standby counsel did not request a competency colloquy or evaluation, instead telling the court that he did not have any particular concerns.

The trial court did not abuse its discretion by declining to order a new competency evaluation.

II.   Right to Counsel

A criminal defendant has the right to assistance of counsel, but he also has the right to waive assistance of counsel. Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). A court may not deny a motion for self-representation on the grounds that self-representation would be detrimental to the defendant's ability to present his case. State v. Madsen, 168 Wn.2d 496, 505, 229 P.3d 714 (2010). Rather, the trial court may only deny a motion to proceed pro se when the request is equivocal, untimely, involuntary, or made without a general understanding of the consequences. Id. at 504-05. If the request is neither equivocal nor untimely, then the court considers whether the request is voluntary, knowing, and intelligent, usually by colloquy. Id. at 504. The competency standard for waiving the right to counsel is the same as the competency standard for standing trial. Fleming, 142 Wn.2d at 862. The trial court's decision on a motion to proceed pro se is reviewed for an abuse of discretion. Madsen, 168 Wn.2d at 504.

Carver argues that the trial court abused its discretion because his waiver was equivocal, because he did not fully understand that he would not have a right to standby counsel at trial, and because he did not understand the maximum possible penalty.

Carver relies on State v. Luvene for his argument that his waiver was equivocal. 127 Wn.2d 690, 698-99, 903 P.2d 960 (1995). In Luvene, a defendant was upset that his defense counsel asked for a continuance. Id. at 698. He stated that he was "'prepared to go for myself'" so that he could go to trial on its set date. Id. But, he also stated, "'This is out of my league for doing that,'" and "'[i]f he's not ready to represent me, then forget that. But I want to go to trial on this date.'" Id. On appeal, he argued

10

that his statements indicated an unequivocal intent to waive his right to assistance of counsel. Id. The Supreme Court determined that his statements were merely an expression of frustration, and not an unequivocal assertion of his right to self-representation. Id. at 699. Carver claims that his request was similarly equivocal, because he only sought to proceed pro so after his request for different counsel was denied. The record amply shows that Carver unequivocally waived his right to counsel. Contrary to Carver's assertions, Carver never asked for new counsel. Rather, on May 4 counsel requested a continuance for further time to pursue an insanity defense. Carver was upset and stated that he did not want to be represented by any attorney. On June 2, the trial court asked if Carver still wanted to represent himself. He said, "I do." On June 17, the trial court again asked if Carver still wanted to represent himself. He said, "Yes. Absolutely." On July 11, the trial court asked once more if Carver still wished to represent himself. He said, "Yes. I do." Carver's statements are not comparable to the ambivalence present in Luverne.

Carver also argues that he did not adequately understand that as a pro se defendant he would not have a right to standby counsel at trial. Again, that argument is not supported by the record. On June 2, Carver requested to represent himself, but asked for the assistance of standby counsel. Judge Kessler explained that he retained the right to appoint standby counsel, but that Carver was not entitled to it. Carver stated that he understood and still wished to represent himself. On June 17, Carver exclaimed, "I just want to know if I can have a standby." Judge Kessler explained that although he could give him standby counsel, Carver would be on his own and there was no guarantee of standby counsel. Carver stated that he understood. Carver's

11

delusions were the only reason his competency was in question at all, there is no evidence that he suffered from any cognitive deficiencies at any time. Thus, there is no reason to question his assurances that he understood. His exclamation on June 17 can be reasonably interpreted as a desire to know whether Judge Kessler would, in fact, appoint standby counsel as opposed to whether he had a right to standby counsel.

Lastly, Carver argues that his waiver was not voluntary because he was never accurately advised of his maximum possible penalty. The trial court's colloquy concerning waiver should cover the seriousness of the charge, the possible maximum penalty involved, and the existence of technical, procedural rules governing trial. State v. Silva, 108 Wn. App. 536, 539, 31 P.3d 729 (2001). When the defendant is not accurately advised on the maximum possible penalty, he is not capable of making an intelligent waiver. Id. at 541. The Ninth Circuit has held that an overstatement of the maximum possible sentence is not an accurate statement. United States v. Forrester, 512 F.3d 500, 507 (9th Cir. 2007).

But, waiver is not compromised when the trial court fails to accurately advise the defendant if the defendant is otherwise aware of the nature and classification of the charge, and the possible penalties. State v. Sinclair, 46 Wn. App. 433, 438, 730 P.2d 742 (1986). Where the defendant is not informed or otherwise aware, reversal is required. Silva, 108 Wn. App. at 540, 542. The court does not engage in harmless error analysis. Id.

Judge Kessler first advised Carver of the maximum possible penalty on June 2. At that point, Carver had been charged with two felonies and two gross misdemeanors.

12

The State indicated that it might add a felony malicious mischief charge. [2] Judge Kessler stated that each felony could result in a five year sentence, that each gross misdemeanor could result in a one year sentence, and that the sentences could run consecutively. Judge Kessler then advised Carver that he could be facing 32 years if the sentences ran consecutively. Carver indicated that he understood. Based on the information available at that time, that advisement was correct as to the maximum penalty for each offense. But, the maximum consecutive sentence, even if the State added a third felony charge, was only 17 years.

On June 17, Judge Kessler again advised Carver of the maximum possible penalty. He told Carver that he faced five years for each of the three felonies and one year for each of the two gross misdemeanors, and that the time could run consecutively. Judge Kessler did not add the sentences together or state the maximum possible total sentence. Carver indicated that he understood.

On July 11, Judge Gonzalez asked Carver to recite the charges in his own words. Carver stated he was charged with two counts of violating a restraining order, one count of harassment against his mother, one count of stalking Smith, and one misdemeanor charge for malicious mischief. Judge Gonzalez then asked Carver to recite the maximum possible penalty. Carver responded that the he was informed the maximum penalty would be five years. The prosecutor agreed, but clarified that it was five years for each of the two felony counts.

---

[2] Ultimately, the State did not charge an additional felony, instead charging malicious mischief in the third degree, a gross misdemeanor.

13

The only misstatement of the maximum sentence was the improper maximum concurrent sentence length stated on June 2. At that hearing, Judge Kessler accurately stated the maximum sentence for each charge. On June 17, Judge Kessler again accurately stated the maximum sentence for each charge. Carver indicated on June 2 and June 17 that he understood the time per offense and that they could run consecutively. On July 11, he stated that the maximum penalty was five years. The prosecutor clarified that that was five years per felony. There is no evidence of cognitive deficiencies that give reason to doubt his statements that he understood. From the June 2 and June 17 proceedings, it is clear that Carver was informed of the nature and classifications of the charges and the potential penalties. We conclude that Carver understood the penalties he faced and that his waiver was knowing. The trial court did not commit an abuse of discretion by allowing Carver to represent himself pro se.

We affirm.

WE CONCUR: