# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON ,

               Respondent,

        v.

TERRY KEITH PLEASANT,

               Appellant.

No. 78943-1-I

DIVISION ONE

UNPUBLISHED OPINION

APPELWICK, J. — Pleasant appeals his convictions for violation of a no-contact order. He waived his right to counsel without being advised of the maximum potential sentence. We reverse and remand for a new trial.

FACTS

On August 22, 2017, the Snohomish County District Court entered a no-contact order prohibiting Terry Pleasant from contacting his girlfriend Jessica Fairchild. The order was in effect for five years, until August 22, 2022, and prohibited Pleasant from contacting Fairchild as follows:

> A. do not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person
>
> B. do not contact the protected person, directly, indirectly, in person or through others, by phone, mail, or electronic means, except for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers.
>
> C. do not knowingly enter, remain, or come within <u>300 feet</u> (1,000 feet if no distance entered) of the protected person's residence, school, workplace.

Citations and pin cites are based on the Westlaw online version of the cited material.

On November 3, 2017, Pleasant and Fairchild were sharing a motel room in south Everett, and offered to share the room with Stephanie Mancinii and Mancinii's two young daughters. The next morning, Mancinii was awakened by Pleasant and Fairchild arguing. At one point, Pleasant grabbed Fairchild's luggage and threw it off the second story balcony into the parking lot. Mancinii was scared the situation would escalate, so she told her daughters if she gave them a certain look, she wanted them to go downstairs and call 911. When Pleasant pushed Fairchild and she fell down, scraping her face, Mancinii gave the signal to her daughters. They left, pretending to get a soda, but instead they called 911. Pleasant then threatened Fairchild, saying, "'Bitch, you think you're going to survive this?'" When the girls came back, Pleasant told Fairchild, "'Let's go. The cops are coming.'" Pleasant grabbed his bike and left while Fairchild went to the parking lot to collect her luggage.

Everett police officers responded to the 911 call. Officer Ryan Hogue contacted Fairchild outside the motel room. Fairchild did not want to cooperate or tell him what happened. Hogue saw a scratch on the side of her face and asked her about it, but she covered it up and was resistant to having it photographed. A second officer, Joshua Doonan, arrived and spoke with Manicinii in the motel room. Doonan then left to search for Pleasant and found him on his bike about eight or nine blocks from the motel.

Doonan stopped Pleasant, arrested him, and advised him of his rights. Pleasant said he understood his rights and was willing to talk to Doonan. Doonan

detained Pleasant in the patrol car while Hogue retrieved Mancinii to identify him. Mancinii identified him as the person who assaulted Fairchild.

A third officer, Jared Corson, arrived to book Pleasant into jail. Corson confirmed that Doonan had read Pleasant his Miranda[1] rights and that Pleasant was willing to talk with the officer. Pleasant told Corson he had been across the street raking leaves for an unnamed woman. When Corson suggested the motel might have surveillance video, Pleasant admitted he had been at the motel looking for work, but denied seeing Fairchild. In the meantime, officers learned from dispatch that Pleasant had a no-contact order with Fairchild.

Doonan then took Pleasant back to the motel so he could be transferred to Corson's patrol car. When they arrived at the motel, Fairchild was in the parking lot. As Pleasant was being transferred to Corson's car, he yelled at Fairchild, asking her if she had called the police and telling her to bail him out. Hogue and Doonan warned him if he continued to speak to Fairchild he might face additional charges of violating the no-contact order. Pleasant ignored their warnings and continued to yell at her.

On the way to the jail, Pleasant repeatedly asked Corson if Fairchild told them he assaulted her. Corson told Pleasant he could not answer that question, but Pleasant continued to ask, adding, "'She knows better than that. She better not have.'"

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The State charged Pleasant with one count of felony violation of a no-contact order and one count of misdemeanor violation of a no-contact order. The felony count was based on the assault in the motel room and the misdemeanor count was based on the communication in the parking lot. Pleasant proceeded to trial, represented by public defense counsel.

Following jury selection and just before opening statements, Pleasant asked the court to dismiss his attorney and allow him to proceed pro se. The court told Pleasant, "I have a few questions so I can understand whether you're making a knowing, voluntary, and intelligent waiver of your right to a lawyer." The court asked Pleasant about his legal training, cautioned him about the risks of self-representation, and warned him the court would not assist him at trial. At no point did the court—or anyone—inform Pleasant of the sentence he faced if convicted on either count. The court found that Pleasant made a knowing, voluntary and intelligent waiver of the right to counsel and released defense counsel.

While the State's first witness was on the stand, Pleasant asked the court to reappoint counsel. The court denied the request, telling Pleasant that the court tried to tell him it was a bad choice to proceed without an attorney but he had already decided to make this "terrible choice." The court did not consider whether Pleasant's attorney was still available or whether a reappointment of counsel would cause undue delay. Before the verdict, Pleasant made two more requests to have counsel reappointed, which were denied.

The jury convicted Pleasant on both counts. The court sentenced him to 57 months' confinement on the felony conviction with a consecutive sentence of 90 days' confinement on the misdemeanor conviction. Over Pleasant's objections, the court included several prior convictions from California in his offender score. The court also issued a postconviction domestic violence no-contact order prohibiting contact with Fairchild and imposing fees totaling $715 ($500 victim assessment, $100 DNA (deoxyriboneucleic acid) collection fee, $100 domestic violence penalty, and $15 violation of domestic violence order fee).

Pleasant appeals.

## DISCUSSION

Pleasant contends his waiver of the right to counsel was not knowing, intelligent, and voluntary because he was not advised of the maximum penalty for the charged offenses. We agree and reverse his convictions.

Under both the federal and state constitutions, a criminal defendant has the right to self-representation. State v. Silva, 108 Wn. App. 536, 539, 31 P.3d 729 (2001). But, trial courts "must 'indulge in every reasonable presumption against a defendant's waiver of his or her right to counsel' before granting a defendant's request to waive the right to assistance of counsel and proceed pro se." State v. Curry, 191 Wn.2d 475, 486, 423 P.3d 179 (2018) (internal quotation marks omitted) (quoting State v. Madsen, 168 Wn.2d 496, 504, 229 P.3d 714 (2010)). In doing so, the court must find that the request for self-representation is timely and unequivocal, and that the defendant knowingly, voluntarily, and intelligently waived the right to counsel. Curry, 191 Wn.2d at 486. A waiver is not knowing and

voluntary when there is no evidence the defendant was advised of the statutory maximum penalty for the offense. See Silva, 108 Wn. App. at 539.

The State concedes, and we agree, that Pleasant's waiver was not knowing, intelligent, and voluntary because there was no evidence that he was advised of the maximum penalty for the offenses. Accordingly, we reverse his convictions and remand for a new trial on both counts. Silva, 108 Wn. App. at 542 ("'deprivation of the right to counsel is so inconsistent with the right to a fair trial that it can never be treated as harmless error.'" (quoting Frazer v. U.S., 18 F.3d 778, 782 (9th Cir. 1994)).

Pleasant urges us to dismiss count II, the misdemeanor count, rather than remand for trial, contending the evidence was insufficient to support the conviction. See State v. Hescock, 98 Wn. App. 600, 604-605, 989 P.2d 1251 (1999) (double jeopardy bars retrial when a conviction is reversed for insufficient evidence). We disagree.

Evidence is sufficient to prove the elements of a criminal offense when, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Vasquez, 178 Wn.2d 1, 6, 309 P.3d 318 (2013). When evaluating a challenge to the sufficiency of the evidence, we draw all reasonable inferences from the evidence in favor of the State and interpret it mostly strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.3d 1068 (1992). A defendant challenging the sufficiency of the evidence admits the truth of all of the State's evidence. State v. Cardenas-Flores, 189 Wn.2d 243, 265, 401

6

P .3d 19 (2017).

To convict Pleasant of violation of a court order as charged in count II, the State was required to prove the following elements beyond a reasonable doubt:

(1) That on or about November 4, 2017, there existed a no-contact order applicable to the defendant;

(2) That the defendant knew of the existence of this order;

(3) That on or about said date, the defendant knowingly violated a restraint provision of the order prohibiting contact with a protected party; and

(4) That the defendant's act occurred in the State of Washington.

The State presented sufficient evidence to establish each element. A no-contact order was in effect at the time and Pleasant knew of its existence. The order was effective until August 17, 2022 and signed by Pleasant. Pleasant testified that he lied to police because he did not want to get in trouble for violating the order and that he and Fairchild knew they could not be together. Pleasant violated the order by yelling at Fairchild in the parking lot when he was being transferred to Corson's patrol car.

Pleasant contends that his contact with Fairchild was not "a willful, volitional act" because the only reason he came into contact with Fairchild again in the parking lot was because the police brought him there. But, the misdemeanor count was not based simply on Pleasant's proximity to Fairchild in the parking lot. It was based on his verbal contact with her. Moreover, Pleasant's contact was willful: he continued to yell at Fairchild after the officers specifically told him not to speak her and warned him it could be another violation of the order.

7

We decline to reach the remaining issues raised in the briefing and in Pleasant's Statements of Additional Grounds.[2]

We reverse and remand for a new trial.

_Appelwick, J._

WE CONCUR:

_Chun, J._         _Andrus, A.C.J._

---

[2] Pleasant claims additional errors relating to the offender score, judgment and sentence, information, jury instructions, verdict forms, and sufficiency of the evidence.