IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

TIMOTHY HARRIS,

Appellant.

No. 82804-5-I

DIVISION ONE

UNPUBLISHED OPINION

DíAZ, J. — Timothy Harris represented himself at a 2018 trial, where a jury convicted him of rape in the first degree and robbery in the first degree. After this court reversed his convictions and remanded the case for retrial in April 2020, Harris again sought to represent himself. The trial court eventually granted his motion. After several continuances, Harris proceeded to a second trial in early 2021, this time without a jury, and the trial court convicted him as charged.

Harris claims on appeal that he did not validly waive his right to counsel and the trial court violated his right to a speedy trial under CrR 3.3 by continuing the trial multiple times over his objection. Harris also claims, and the State concedes, that the trial court erred by imposing Department of Corrections supervision fees

Citations and pin cites are based on the Westlaw online version of the cited material.

as a legal financial obligation (LFO).  We affirm Harris's convictions, but remand to strike the supervision fees.

## I.  FACTS

In 2017, the State charged Harris with rape in the first degree and robbery in the first degree, alleging that he brutally attacked the victim in her home.  Harris represented himself at the 2018 trial and the jury convicted him as charged.  On appeal, this court accepted the State's concession, reversed Harris's convictions based on instructional error, and remanded for retrial.  State v. Harris, No. 79415-9-I, Slip Op. (Wash. Ct. App. March 16, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/794159.pdf.

On remand, the trial court set an initial trial date of September 9, 2020, and Harris filed a motion seeking to represent himself.  The court conducted a colloquy to determine if Harris understood the nature of the charges, the potential penalties he faced, and the rules he would be required to follow if the court allowed him to represent himself.  Ultimately, the court found that Harris's request was equivocal and denied the motion.

Harris's appointed counsel sought two continuances, over Harris's objection, in order to review the transcripts and evidence from the first trial.  The court granted both requests and, as a result, continued the trial to November 30, 2020.  The State then sought an eight-week continuance to accommodate the schedule of a witness who testified at the first trial.  Defense counsel joined the request, indicating that he needed additional time to prepare for trial. Again, over

Harris's personal objection, the court granted the motion, and continued the trial to January 25, 2021.

Approximately two weeks before trial was scheduled to begin, Harris reasserted his motion to proceed pro se. A different trial court judge considered the motion. Again by way of brief summary: noting that Harris had represented himself at the first trial and, two months earlier, the court had engaged in a full colloquy, the court granted his motion.

On the first day of trial before a third judge, Harris moved to dismiss the charges, alleging a speedy trial violation under CrR 3.3, and the trial court denied the motion.

After a bench trial, the court found Harris guilty of both charges and entered findings of fact and conclusions of law. The court imposed an indeterminate sentence on the rape count, with a minimum term of 147 months, the top-end of the standard range, and a concurrent sentence of 54 months on the robbery count.[1]

## II. ANALYSIS

### A. Self-Representation

Harris contends that the trial court erred in granting his second motion to waive counsel without informing him of the possible maximum penalty he faced if convicted. Specifically, Harris contends that the court did not explain that Harris faced a life sentence with the possibility of release only at the discretion of the

---

[1] The sentencing court in 2018 imposed a slightly lower minimum term of 144 months on rape charge, but otherwise imposed the same sentence.

Indeterminate Sentence Review Board (ISRB). Harris maintains that because he lacked critical information to make an informed choice about proceeding without counsel, his waiver of the right to counsel was invalid.

The Washington Constitution and the United States Constitution grant criminal defendants the right to self-representation. State v. Curry, 191 Wn.2d 475, 482, 423 P.3d 179 (2018). But this right is in tension with a defendant's constitutional right to the assistance of counsel. Id. "Because of this tension, a defendant must unequivocally request to proceed pro se before he or she will be permitted to do so." Id. at 482-83. And even if a defendant makes an unequivocal and timely request, the trial court may not grant a defendant's request to proceed pro se unless the defendant's waiver of the right to counsel is voluntary, knowing, and intelligent. Id. at 483.

To determine whether a waiver is voluntary, knowing, and intelligent, the court must confirm "that the defendant understood the seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of his defense." State v. DeWeese, 117 Wn.2d 369, 378, 816 P.2d 1 (1991) (emphasis added). "[A] colloquy on the record is the preferred means of assuring that defendants understand the risks of self-representation." City of Bellevue v. Acrey, 103 Wn.2d 203, 211, 691 P.2d 957 (1984).

While the rights involved in a motion to proceed pro se are constitutionally-based, the validity of a defendant's waiver of the right to counsel is reserved to the trial court's discretion and we review the court's decision on a motion for self-

representation for an abuse of discretion.[2] Curry, 191 Wn.2d at 483; State v. Silva, 108 Wn. App. 536, 539, 31 P.3d 729 (2001). "[E]ven if we disagree with the trial court's ultimate decision, we do not reverse that decision unless it falls outside the range of acceptable choices." Curry, 191 Wn.2d at 484. The trial court is in a superior position to evaluate a defendant's request. Id. at 484-85. Unlike in federal court, the burden of proof on appeal "is on the defendant asserting that his right to counsel was not competently and intelligently waived." State v. Hahn, 106 Wn.2d 885, 901, 726 P.2d 25 (1986).

At the November 2020 hearing on Harris's initial motion, defense counsel confirmed that he had reviewed the waiver of counsel form with Harris "in its entirety," Harris had signed the form, and Harris had, in fact, represented himself in the first trial on the same charges. Although this signed waiver of counsel form supplied to the court is not included in the record on appeal, the record does include two waiver of counsel forms Harris signed in 2018 that expressly informed

---

[2] Harris does not acknowledge the well-settled standard for our review of trial court rulings on requests to forgo counsel, and relies instead on Ninth Circuit caselaw applying a different standard. See State v. Madsen, 168 Wn.2d 496, 504, 229 P.3d 714 (2010) (abuse of discretion standard applies); State v. Curry, 191 Wn.2d 475, 483-86, 423 P.3d 179 (2018) accord; State v. Burns, 193 Wn.2d 190, 202, 438 P.3d 1183 (2019) accord; compare with United States v. Erskine, 355 F.3d 1161, 1166-67 (9th Cir. 2004) (rejecting "plain error review" in favor of de novo review of validity of waiver of counsel). Both federal and Washington law require trial courts to engage in a presumption against the waiver of fundamental constitutional rights, including the right to counsel. See Madsen, 168 Wn.2d at 504; Brewer v. Williams, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed 2d 424 (1977). But the presumption is overcome when there is "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Thus, when a defendant wants to represent himself, courts hold a hearing to make a record as to whether he has made a knowing and voluntary waiver. See Faretta v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

5

him that the statutory maximum penalty for both charged counts was life imprisonment and a $50,000 fine.

The court's colloquy on that first motion addressed Harris's literacy and English capability, his education, and the extent to which he had formal legal training. The court informed Harris that, if allowed to represent himself, he would be held to the same standard as an attorney and expected to follow the court rules and applicable evidentiary and procedural rules. The court set forth the charged offenses and informed Harris that both were Class A felonies and most serious felonies, "so the maximum penalty would be life in prison." The court further explained the indeterminate nature of the sentence he would face if convicted of rape in the first degree, and that if the ISRB released him from custody, he would be subject to lifetime supervision. The court informed Harris of the standard ranges that would apply to each count and that both offenses are "considered strike offenses". Harris indicated his understanding of all the foregoing.

The court then advised Harris that, if it granted his motion, he would not be entitled to assistance from the court, court staff, or the prosecutor, and the court would not appoint standby counsel. The trial court further advised that it would not be required to reappoint counsel if he were allowed to proceed pro se and later changed his mind and wished to be represented. Harris objected, arguing that he had the right to request counsel at any time if he needed one. Thus, the court found that Harris's request was equivocal and denied the motion.

When Harris reasserted his motion approximately two months later, a different trial court judge considered it. The court "abbreviate[d]" the colloquy,

6

since Harris represented himself at trial on the same charges, had already reviewed and signed the form to waive counsel, and participated in a colloquy with the previously-assigned judge several weeks prior. The court confirmed that Harris understood he would be required follow court rules as if he were a lawyer and was not entitled to standby counsel. Noting that Harris was facing a retrial, the court asked Harris if he was "aware of the penalty" he faced if convicted.[3] The court confirmed that Harris's waiver was not a product of threats or promises. While indicating its view that "it's best to have someone who is trained in the law to represent you," the court granted Harris's motion.

Harris argues that the court abused its discretion when it granted his motion without a full colloquy that informed him of the maximum penalty to which he would be exposed at trial. But a deficiency in the colloquy at the time the court accepts a waiver of counsel is not fatal because even in the absence of a colloquy, "a waiver may still be valid if a reviewing court determines from the record that the accused was fully apprised of [the relevant] factors and other risks associated with self-representation that would indicate that he made his decision with his 'eyes open.'" Silva, 108 Wn. App. at 540; see also DeWeese, 117 Wn.2d at 378 (while a colloquy on the record is preferred; "in the absence of a colloquy, the record must

---

[3] The verbatim report of proceedings characterizes Harris's response to the court's question as "indiscernible." The State indicates in its briefing that the parties have reviewed the audio recording of the hearing and are in agreement that Harris audibly indicated that he understood the penalties, but Harris does not mention the audio recording or indicate any such agreement. But the record is clear that the trial court did not inform Harris of the specific maximum statutory penalty at the January 2021 hearing when it granted his motion. Whether or not Harris answered affirmatively is not dispositive of our analysis.

reflect that the defendant understood the seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of his defense."). Specifically, a defendant's waiver may be knowing and intelligent if the record "somehow otherwise show[s] that the defendant ... knew the possible maximum penalty." Acrey, 103 Wn.2d at 211. Viewing the record as a whole, this court is convinced that Harris went into his retrial with his eyes wide open, *i.e.*, he was fully apprised of the possible maximum penalty and other risks associated with self-representation.

Bolstering this conclusion, this court has held, in a remarkably similar case, that experience defending against the same crimes in a prior case may demonstrate awareness of the potential consequences of conviction. State v. Sinclair, 46 Wn. App. 433, 438-39, 730 P.2d 742 (1986). Sinclair sought to represent himself after the court denied his motion to discharge appointed counsel. Id. at 434-35. After advising Sinclair that he would be required to follow technical rules, the trial court granted his motion. Id. at 435. On appeal, this court addressed whether Sinclair's waiver of the right to counsel was knowing and intelligent where the trial court accepted the waiver without specifically informing Sinclair of the maximum penalty upon conviction. Id. at 438. Because the record indicated that Sinclair had previously been convicted of the same crime with which he was charged, this court concluded that he was "well aware" of the maximum possible

8

sentence at the time of the waiver and his waiver of the right to counsel was valid. Id. at 439.[4]

Harris relies on Silva, 108 Wn. App. at 537-538, for the proposition that a court's failure to explain the maximum possible penalties a defendant faced undermines the validity of the waiver of counsel. There, the defendant was charged with several offenses and sought to proceed pro se during a motion hearing in a separate, but concurrent, criminal matter. Silva was already representing himself in the other matter and the court granted his motion, without conducting a new colloquy, in reliance on the colloquy previously conducted in the other matter. Id. at 538. Silva challenged the validity of his waiver on appeal.

This court observed that it was problematic, though not fatal, that the only colloquy conducted by the court before Silva's waiver occurred in a separate criminal matter. Id. at 540. However, it was fatal that (1) the prior colloquy was tailored to Silva's postconviction request in the other matter, (2) the colloquy included no warnings about the risks associated with self-representation in a jury trial, and (3) the colloquy failed to include "critical information" about "the nature of the charges in *this* case and the maximum possible penalties Silva faced in this case." Id. at 540 (emphasis added). Under Silva, a prior colloquy cannot demonstrate awareness of the range of potential punishment unless that colloquy

---

[4] In reply, Harris suggests that Sinclair does not apply because it pre-dates by more than two decades our supreme court's decision in Madsen, 168 Wn.2d at 504-05, which articulated standards for the trial court's assessment of motions to proceed pro se. But Sinclair is not inconsistent with Madsen, or any other case addressing the validity of a waiver of the right to counsel, and Harris does not argue otherwise.

pertains to the same charges. And because Silva was "<u>never</u> advised" of the statutory maximum penalties for the charged offenses, we held that he "could not make a knowledgeable waiver of his constitutional right to counsel." <u>Id</u>. at 541 (emphasis added).

This case is distinguishable because Harris's earlier colloquy occurred in the same criminal proceeding, where Harris faced the same criminal charges, had already represented himself through trial and had been sentenced to the very sentences of which he now professes a lack of understanding, signed multiple waiver of counsel forms confirming his awareness of the maximum penalties, and was advised just two months earlier of the statutory maximum penalties he faced if convicted.

Harris also suggests that the prior advisement was "inadequate" because the court ultimately concluded that his request was equivocal. But it is not clear, and Harris fails to explain or provide authority explaining, how the first court's determination that his initial request was equivocal relates to or affects his awareness of the potential punishment. That court did not "close his eyes" to the risks associated with self-representation.

Finally, Harris also relies on <u>United States v. Moskovits</u>, 86 F.3d 1303, 1306 (3rd Cir. 1996), to argue that the record is insufficient to demonstrate his awareness of the maximum penalty. That case is also distinguishable. A jury convicted Moskovits of drug offenses and the court imposed a 15-year sentence. <u>Id</u>. at 1305. The court later granted Moskovits's motion for collateral relief based on ineffective assistance of counsel, vacated his convictions, and granted his motion to represent

himself on retrial. Id. The district court conducted a "lengthy and detailed" colloquy on his motion, but omitted *any* discussion of punishment. Id. at 1306. The appellate court rejected the government's invitation to rely on presentence investigation reports prepared before the first sentencing or an in-chambers discussion just before trial to infer that the defendant was aware, when he waived his right to counsel, that he could receive a sentence beyond the 15-year mandatory minimum on retrial. Id. at 1307-08. The court found that there was no basis to assume that the defendant read and understood the presentence reports or that counsel then representing him explained the range of punishment and any discussion after the waiver occurred had no bearing on the defendant's understanding at the time of the waiver. Id.

Unlike Moskovits, the trial court here engaged in a colloquy, before Harris waived his right to counsel, that addressed the maximum punishment.[5]

For these reasons, we conclude the waiver of counsel was valid.

B. Speedy Trial

Harris claims that his trial was unjustifiably delayed in violation of his right to a speedy trial under CrR 3.3. We disagree.

---

[5] Harris also suggests in reply that the facts here are analogous to those in State v. Winterer, No. 35854-2-III, Slip Op. (Wash. Ct. App. May 30, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/358542_unp.pdf, an unpublished case decided by Division Three of this court. They are not. The trial court granted Winterer's motion to proceed pro se after a colloquy, later reappointed counsel, and then granted a second motion to proceed pro se after another colloquy. Winterer, Slip Op. at 2-4. Unlike here, neither colloquy included any discussion about possible penalties. Id.

The trial court set an initial trial date on remand of September 9, 2020, based on a speedy trial expiration date of October 1, 2020.[6] At the August 2020 omnibus hearing, defense counsel asked to continue the trial for six weeks, until October 19, 2020, citing the need to review discovery and the transcripts from the first trial. The court granted the motion, over Harris's personal objection, finding good cause to continue and no prejudice to Harris's defense, and recalculated the trial expiration date to November 18, 2020. The court observed that counsel's review of the record would be time-consuming, particularly since defense counsel had not represented Harris in the first trial.

On October 2, 2020, defense counsel requested another a six-week continuance, to November 30, 2020. Counsel informed the court that he was currently in trial and had not yet completed review of the trial transcripts. The court granted defense counsel's request, again over Harris's objection, finding good cause to continue and no prejudice to Harris. The court recalculated the trial expiration date to December 30, 2020. The State did not object to either of these requests.

In November 2020, immediately after the trial court denied Harris's initial motion to proceed without counsel, the court considered a third and final motion to continue the trial. This time, the State sought a continuance of eight weeks, until

---

[6] Harris does not challenge the trial court's initial calculation of the speedy trial expiration date of October 1, 2020, calculated in accordance with the Washington State Supreme Court's pandemic-related order, No. 25700-B-618 which excluded the period between the date of the order, April 29, 2020, and September 1, 2020 from the calculation of the time for trial. See Second Revised & Extended Order, No. 25700-B-618, In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency (Wash. Apr. 29, 2020).

January 25, 2021. The State explained that the police department's latent print examiner who testified in the first trial was on family medical leave until early February. Noting Harris's personal objection, defense counsel joined in the State's motion because he needed additional time to prepare for trial. Again, the court granted the motion, over Harris's objection, finding good cause to continue the trial and no prejudice to Harris's defense. The court reset the trial expiration date to February 24, 2021.

CrR 3.3, the time-for-trial rule, "is not a constitutional mandate." State v. Terrovona, 105 Wn.2d 632, 651, 716 P.2d 295 (1986). Here, where this court granted a new trial, CrR 3.3 required Harris, who was in custody pending trial, to be tried within 60 days of the order granting a new trial. See CrR 3.3(b)(1)(i), (c)(2)(iii); State v. Ollivier, 178 Wn.2d 813, 823, 312 P.3d 1 (2013). Continuances granted by the trial court are excluded from the computation of the time for trial. CrR 3.3(e)(3). The trial court may grant a party's motion to continue the trial date when it "is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(2). In granting the continuance, the trial court must "state on the record or in writing the reasons for the continuance." Id. "The bringing of such motion by or on behalf of any party waives that party's objection to the requested delay." Id.

We review a trial court's application of CrR 3.3 de novo, but review a trial court's decision to grant or deny a continuance for an abuse of discretion. Ollivier, 178 Wn.2d at 822-23, 826. We will not disturb a trial court's decision to grant or deny a motion for a continuance absent a clear showing that the exercise of

13

discretion was manifestly unreasonable, or its decision was based on untenable grounds. State v. Kenyon, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009).

Harris's speedy trial argument focuses on the trial court's decision granting the State's motion to continue in November 2020. Harris claims the court abused its discretion when it continued the trial based on the latent print examiner's unavailability because, having testified at the first trial that Harris's fingerprints were not found at the scene of the crime, he was not a significant State witness and the parties stipulated to the admission of his prior testimony. But both scheduling conflicts and the need to allow counsel time to prepare for trial are valid reasons for a continuance. State v. Flinn, 154 Wn.2d 193, 200, 110 P.3d 748 (2005). In particular, the unavailability of a material witness may be a proper basis for continuing a trial under CrR 3.3(f) if (1) the witness is unavailable for a valid reason, (2) the witness will become available in a reasonable time, and (3) there is no substantial prejudice to the defendant. State v. Jones, 117 Wn. App. 721, 729, 72 P.3d 1110 (2003). The burden of establishing materiality "has been described as establishing a colorable need for the person to be summoned." State v. Smith, 101 Wn.2d 36, 41-42, 677 P.2d 100 (1984).

The prosecutor explained that the witness had testified at the first trial, and she believed the testimony was necessary because it established the foundation for admission of a number of exhibits and because the witness had examined lifted prints and assisted with processing the crime scene. Harris did not challenge the State's assertion of materiality, and as noted, defense counsel joined in the request

14

to continue, citing a need for additional time to prepare for trial in light of the denial of Harris's motion to represent himself.

The witness in this case was unavailable due to family medical leave, a valid basis for unavailability. See State v. Grilley, 67 Wn. App. 795, 799, 840 P.2d 903 (1992) (law enforcement officer's previously scheduled vacation was a valid reason for the officer's unavailability). The prosecutor sought a continuance of eight weeks, until late January, presumably on the assumption that the witness would be available in early February before the trial would conclude. The delay was significant, but not unreasonable, given the circumstances. Harris objected to the continuance, but did not identify any prejudice to his defense.

On appeal, Harris suggests he was forced to proceed pro se because of the continuances. But the record does not establish that the continuances were the sole or primary reason for Harris's motion. Harris told the court in January 2021 that he wanted to represent himself because he was ready for trial and counsel was not. But, he also represented himself at the first trial and indicated in his November 2020 motion that he was electing to proceed without counsel because of "inefficient counseling."

Harris also contends that the trial court failed to state the basis for the continuances. But in granting each motion, the court found good cause to continue and no prejudice to Harris's defense. And each of the trial court's written orders includes the factual basis for the continuance.

The court stated its reasons in accordance with CrR 3.3(f)(2). And, with regard to the State's request regarding the latent print examiner who testified on

15

behalf of the State in the first trial, Harris did not challenge the State's assertion of materiality, and the court had no way of knowing the parties would later stipulate to the admission of the witness's prior testimony. For these reasons, the court did not abuse its discretion in concluding the State established a "colorable need" for the witness's testimony and granting the State's motion to continue. See Smith, 101 Wn.2d at 41-42. Harris fails to establish a violation of his right to a speedy trial under CrR 3.3.

C. Community Custody Supervision Fees

Harris contends that the sentencing court waived all discretionary LFOs, but the judgment and sentence erroneously requires him to pay community custody supervision fees to the Department of Corrections. The State concedes that this LFO should be stricken, as the sentencing court clearly intended to impose only mandatory LFOs.[7] See State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020) (striking supervision fees imposed on an indigent defendant where "[t]he record demonstrate[d] that the trial court intended to impose only mandatory LFOs."); accord State v. Bowman, 198 Wn.2d 609, 629, 498 P.3d 478 (2021). We accept the concession and direct the trial court to strike the community custody supervision fees from Harris's judgment and sentence.

//

//

---

[7] The sentencing court did not explicitly find Harris to be indigent, but imposed only the "mandatory" victim penalty assessment, DNA (deoxyribonucleic acid) collection fee, and restitution, in an amount to be determined at a later hearing. The State appears to concede that the court implicitly determined Harris's indigence.

D. Statement of Additional Grounds

In a pro se statement of additional grounds for relief, Harris appears to challenge the court's determination that his initial request to proceed pro se was equivocal. But, as Harris admits, he "objected" when the court informed him it would not be required to reappoint counsel if Harris later changed his mind about representing himself. The court's advisement was correct. See DeWeese, 117 Wn.2d at 376–77 (once a defendant has made a valid choice to proceed pro se, the defendant may not subsequently demand the assistance of counsel as a matter of right as the reappointment of counsel is within the discretion of the trial court). Given Harris's instance that he was entitled, as matter of right, to change his mind and have counsel reappointed, the record supports the trial court's determination that Harris's initial request to represent himself was equivocal.

Harris also appears to challenge the determination that there was good cause to grant continuances under CrR 3.3. This issue was adequately addressed by counsel and will not be considered further. See RAP 10.10(a) (pro se statement of additional grounds is available for claims that have not been adequately addressed by counsel's briefing).

We affirm Harris's convictions, but remand to the trial court to amend his judgment and sentence.

Díaz, J.

WE CONCUR:

Andrus, C.J.

Mann, J.

17